717 So.2d 282 (1998)
Guyon and Kathy ADAMS, Plaintiff-Appellee/Appellant,
v.
FALCON EQUIPMENT CORPORATION and Homestead Insurance Company, Defendant-Appellant/Appellee.
No. 30754-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1998.
*283 G. Gregory Green, for Appellants Guyon and Kathy Adams.
J. Michael Rhymes, Monroe, for Appellant Falcon Equipment Corp.
Brian E. Crawford, Neal L. Johnson, Jr., Monroe, for Appellant Breck Construction, Inc.
Charles S. Smith, Karen L. Hayes, Monroe, for Appellee Homestead Insurance Co.
Charles W. Rea, Baton Rouge, for Intervenor Fidelity & Casualty Co. of New York.
Before STEWART, GASKINS and PEATROSS, JJ.
*284 GASKINS, Judge.
The plaintiffs, Guyon and Kathy Adams, as well as the defendants, Falcon Equipment Corporation and Breck Construction Company with its insurer, Audubon Insurance Company, appeal from the trial court's disposition of several motions for summary judgment. For the following reasons, we reverse the summary judgment in favor of Falcon and its insurer, Homestead Insurance Company (Homestead), on the issue of indemnity and affirm the grant of summary judgment in favor of Homestead on the issue of insurance policy limits.

FACTS
This matter arises from an accident and injury sustained by the plaintiff, Guyon Adams, on August 2, 1993, while working for his employer, Breck Construction Company (Breck), at a job at the Ethyl Corporation plant near Magnolia, Arkansas. Breck was performing services at the plant which required the lease of several pieces of heavy equipment. Breck's vice president, Jim Murray, negotiated a lease with Falcon Equipment Corporation (Falcon) for a seventy-five ton crane and a cherry picker. Breck also needed a float and a fifth wheel truck. Breck claims these two items were loaned by Falcon to Breck, free of charge, because Breck made such a sizeable lease agreement with the company.
On the date of the accident, Eric Herndon, an employee of Breck, who was not authorized to operate the fifth wheel truck, decided that he would help out by starting the truck. There are allegations that he attempted to start the truck without engaging the clutch. There is also some indication that the truck was in reverse and not in neutral. There are further assertions that the truck was defective. As a result of Mr. Herndon's efforts, when he attempted to start the truck, it lurched backward approximately four feet. The plaintiff was standing behind the truck at the time. He was pinned between the bumper of the truck and a hook type hitch on a crane. The plaintiff suffered serious injuries as a result of the accident.
Mr. Adams filed suit against Falcon Equipment Corporation and its insurer, Homestead, alleging that the truck was defective in that its air brakes did not work, the air brakes did not have a reverse guard, the truck did not have flashing lights or an audible signal when the truck was backing up, and the truck was capable of being started while in gear. Kathy Adams also joined in the claim as a plaintiff, asserting a claim for loss of consortium due to her husband's injuries.
Falcon and Homestead filed a third party demand naming Breck Construction and Audubon Insurance Company (Audubon) as third party defendants, seeking indemnity against Breck. Falcon contended that the lease agreement concerning the truck included an indemnity clause whereby Breck would indemnify Falcon for any and all claims arising from the use of the truck involved in this accident. According to Falcon, the lease agreement also specified that Breck would obtain insurance on the leased equipment and would name Falcon as an additional insured.
On March 27, 1997, Breck and Audubon filed a motion for summary judgment, to dispose of Falcon and Homestead's third party claim for indemnity. Breck and Audubon argued that Falcon can only avail itself of the indemnity provision contained in the lease if the provision is unambiguous and expressed in unequivocal terms. Breck contended that in this case, the indemnity provision is ambiguous. Breck asserted that the truck was loaned to the company by Falcon and was not leased. Also, because a lease was not contemplated, Breck never obtained insurance on the truck as specified in the lease document. Breck further asserted that the deposition of Jim Murray, the Breck representative who negotiated the equipment agreement, shows that he was under the impression that the truck was loaned, not leased, because Breck did not pay rent for the truck. His understanding was that the loan of the truck was included because of the large amount of equipment actually leased by Breck. Mr. Murray also stated in his deposition that he did not read the indemnity or insurance clauses on the agreement and stated *285 that in thirty-two years of negotiating equipment leases he had never read the terms and conditions on the leases. According to Breck, it was entitled to summary judgment on the indemnity issue because of the ambiguities in the indemnity clause.
On April 25, 1997, Falcon and Homestead Insurance Company filed a joint motion for summary judgment on the issue of Falcon's entitlement to indemnity from Breck for the claims raised in this case. Falcon and Homestead contended that Jim Murray, Breck's representative, signed a clear agreement to indemnify Falcon from any and all claims arising from the use of the truck involved in the accident and agreed to add Falcon as an additional insured on its insurance policy. Falcon asserted that the agreement was clear and unambiguous and is not affected by Breck's tort immunity.
On August 4, 1997, the trial court denied the motion for summary judgment filed on behalf of Breck and Audubon and granted the motion for summary judgment filed by Falcon and Homestead. The court rejected the argument that the indemnity clause is ambiguous and found the indemnity agreement to be valid and enforceable. The trial court ruled that Breck is liable to indemnify Falcon for any liability which might be placed on the corporation in connection with the claims brought by the plaintiffs in this matter. On August 6, 1997, the trial court certified this ruling as an appealable final judgment.
Homestead Insurance, Falcon's insurer, filed a motion for summary judgment asserting that its policy to Falcon limits coverage for non-specified operators of vehicles to the minimum statutory limits required by the state in which the accident occurred. Homestead argues that because Eric Herndon was not a specified operator of the vehicle, and since the Arkansas minimum limits are $25,000.00 per person or $50,000.00 per occurrence, the policy limit in this case, should Falcon be found liable, is $25,000.00.
On September 5, 1997, the trial court granted summary judgment on behalf of Homestead, finding that its liability is limited under the terms of the policy to $25,000.00, if Falcon is found to be liable. The judgment further specified that the court determined that there was no just reason for delay and the summary judgment was final for purposes of appeal.
On August 26, 1997, Breck and Audubon devolutively appealed from the summary judgment of August 4, 1997, finding that the indemnity agreement in the lease contract was valid and enforceable.
Falcon and the plaintiffs, Guyon and Kathy Adams, appealed from the September 5, 1997 grant of summary judgment in favor of Homestead, finding that its liability was limited to $25,000.000 under the terms of the policy.

SUMMARY JUDGMENT
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. Traweek v. Jackson, 30,248 (La.App. 2d Cir.2/25/98), 709 So.2d 867. Summary judgments are reviewed on appeal de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Traweek v. Jackson, supra.
In Louisiana, the law regarding summary judgment is set forth in La. C.C.P. art. 966. This article was amended by Acts 1996, 1 st Ex.Sess., No. 9 § 1 to legislatively overrule the jurisprudential presumption against summary judgment. The amendment "leveled the playing field" between the parties by allowing the supporting documents submitted by the two parties to be scrutinized equally and removing the overriding presumption in favor of trial on the merits. Hayes v. Autin, 96-287 (La.App. 3d Cir.12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41; Berzas v. OXY USA, Inc., 29,835 (La.App. 2d Cir.9/24/97), 699 So.2d 1149. A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Mixon v. Progressive Specialty Co., *286 29,698 (La.App. 2d Cir.6/18/97), 697 So.2d 662.
Amended again in 1997, La.C.C.P. art. 966 now states that if the moving party points out that there is an absence of factual support for one or more of the essential elements to the adverse party's claim, action, or defense, and the nonmoving party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact and summary judgment should be granted. Acts 1997, No. 483; Berzas v. OXY USA, Inc., supra. Further, La. C.C.P. art. 967 provides that when a motion for summary judgment is made and supported as provided above, an adverse party may not rest on his pleadings, but his responses, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

INDEMNITY
Breck and its insurer, Audubon, appeal from the August 4, 1997 summary judgment in favor of Falcon and its insurer, Homestead, finding valid an indemnity clause contained in a contract between Breck and Falcon. Breck has asserted numerous arguments in support of the contention that the indemnity clause is ambiguous and therefore, not enforceable. First, Breck argues that the trial court erred in failing to find that there was no lease in this case. According to Breck, the agreement was not a lease because there was no price, which is a necessary element of such an agreement. Therefore, Breck asserts that the lack of a price renders the entire contract null and void. Breck also contends that, because there is no valid lease, the designation of Falcon as lessor and Breck as lessee is inaccurate and the incorrect designation of the parties creates an ambiguity.
Breck contends that the trial court erred in determining that the fifth wheel truck was part of the "leased premises." Breck asserts that the trial court was incorrect in finding that the fifth wheel truck was part of an entire contractual package between Falcon and Breck.
Breck asserts that the trial court erred in failing to recognize that the provision in the agreement requiring Breck to obtain insurance on the truck, naming Falcon as an additional insured, was without effect and did not operate to validate the indemnity provision. Breck seems to argue that the portion of the agreement dealing with insurance was without effect because the parties did not discuss insurance, their agent, Jim Murray, never contemplated that Breck would have to supply insurance and Falcon delivered the truck at issue here without requiring proof that insurance had been obtained.
Breck also argues that contracts of indemnity are to be strictly construed and a contract will not be construed to indemnify against losses resulting from a party's own negligent act unless the intent is expressed in unequivocal terms. Breck asserts that its representative, Jim Murray, never contemplated entering into an indemnity agreement when he signed the purported lease and merely thought of that document as a form that accompanied the delivery of two pieces of equipment loaned to Breck by Falcon. Breck also contends that a valid indemnity agreement must have explicit, unequivocal language, clearly expressing the intent to provide indemnification for the indemnitee's negligence before such intent will be found to exist. Breck claims that the agreement in this case does not contain the type of language necessary to a valid indemnity agreement.
Because we find that the language of the indemnity agreement failed to set forth in clear and unequivocal terms the intent to indemnify and hold Falcon harmless from its own negligence, we find that the trial court erred in granting summary judgment in favor of Falcon and against Breck. Also, we find that the trial court erred to the extent it found that the requirement that Breck obtain insurance validated the indemnity agreement. Because our decision in this regard is dispositive of the issue regarding the propriety of the summary judgment in favor of Falcon and Homestead on the indemnity provision, it is not necessary to address the *287 other arguments raised by Breck regarding the indemnity clause.
The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity. When the common intent of the parties and the words are clear and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Agreements to indemnify are strictly construed and the party seeking to enforce the agreement bears the burden of proof. Kelly v. Sneed, 27,171 (La.App. 2d Cir.8/23/95), 660 So.2d 118, writ denied 95-2350 (La.12/8/95), 664 So.2d 426; Liem v. Austin Power, Inc., 569 So.2d 601 (La.App. 2d Cir.1990).
A contract of indemnity, whereby the indemnitee is indemnified against the consequences of his own negligence, is strictly construed and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent acts unless such an intention is expressed in unequivocal terms. Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977); Perkins v. Rubicon, Inc., 563 So.2d 258 (La. 1990).
Where there is doubt as to indemnification against an indemnitee's own negligence then liability, usage, custom or equity may not be used to interpret a contract expansively in favor of the indemnitee. In such a case, if the provision is still in doubt after applying the general rules of construction and interpreting the provision in light of the contract as a whole, i.e., if the intention to indemnify against an indemnitee's liability for his negligence is equivocal, there is a presumption that the parties did not intend to indemnify an indemnitee against losses resulting from his own negligent act. Soverign Insurance Company v. Texas Pipe Line Company, 488 So.2d 982 (La.1986).
In Arnold v. Stupp Corporation, 205 So.2d 797 (La.App. 1st Cir.1967), the court recognized that there are majority and minority views in interpreting indemnity contracts. The majority view provides that general words such as "any and all liability" does not necessarily import an intent to impose an obligation so extraordinary and harsh as to render an indemnitor liable to an indemnitee for damages occasioned by the sole negligence of the latter. The minority view is bottomed on the principle that the words "any and all liability" are unambiguous and the restrictive interpretation adhered to in the majority view is violative of the rule of law that a contract freely entered into, which is not against public policy or prohibited by law, is the law between the parties and subject to judicial recognition and enforcement. In Arnold v. Stupp Corporation, supra, the court recognized that Louisiana is committed to the majority view on the question.
The indemnity clause in the agreement between Breck and Falcon reads as follows:
The lessee further agrees to indemnify the Lessor and hold Lessor harmless against all loss, damage, expenses, and penalty arising from any action due to any injury to person or property of any character whatsoever occasioned by the operation, use, loading, unloading, handling or transportation of any of the equipment during the lease period.
Also, the agreement contained the following clause requiring Breck to secure insurance naming Falcon as an additional insured:
THE LESSEE FURTHER AGREES TO PROTECT THE LESSOR ON THE CONTRACT WITH FULL INSURANCE COVERAGE, said insurance to cover damage occasioned by fire, theft, flood, explosion, accident, act of God or any other cause that may occur during the life of this lease and to provide the Lessor with satisfactory evidence of liability insurance coverage as per attached certificate form and naming Lessor as Additional Insured.
The language of the indemnity clause in this case simply does not contain language evidencing a clear and unequivocal intent for Breck to indemnify Falcon for Falcon's own negligence. Falcon has failed to set forth any authority for the proposition that language such as that contained in this indemnity clause is sufficient to convey the intent to indemnify Falcon for its own negligence. In cases in which the indemnity clause does not expressly provide that the indemnitor will *288 indemnify the indemnitee for the indemnitee's own negligence, the courts have found no duty to indemnify for causes of action arising from such negligence. See Arnold v. Stupp Corporation, supra; Hesse v. Champ Service Line, 97-1090 (La.App. 3d Cir.2/4/98), 707 So.2d 1295; Carr v. City of New Orleans, 626 So.2d 374 (La.App. 4th Cir.1993), writ denied 94-0062 (La.3/11/94), 634 So.2d 398; Laper v. Board of Commissioners of Port of New Orleans, 617 So.2d 505 (La.App. 4th Cir.1993), writ denied 624 So.2d 1230 (La.1993); Stewart v. Winn Dixie Louisiana, Inc., 96-599 (La.App. 5th Cir. 12/11/96), 686 So.2d 907. The language in the clause in the present case contains the type of general language similar to that found to be insufficient in the cases cited above.
We note that the summary judgment in favor of Falcon and Homestead seems to be based upon a finding that such a judgment was warranted because the indemnity agreement also included the requirement of obtaining insurance and naming Falcon as an additional insured. This reasoning is similar to that employed by the Fourth Circuit in Hamilton v. Facility Management of Louisiana, Inc., 545 So.2d 1198 (La.App. 4th Cir. 1989), reversed 549 So.2d 316 (La.1989). That court reasoned that when a contract contains a general indemnity provision together with the agreement to provide comprehensive general liability and contractual insurance, the agreement contains the language necessary to evidence the intent to indemnify the indemnitee for the indemnitee's negligence. However, we are compelled to note that the Louisiana Supreme Court reversed and vacated the holding in Hamilton. Further, we have found no jurisprudence subsequent to Hamilton, holding that the combination of a general indemnity clause and the requirement of additional insurance evidences an intent to indemnify an indemnitee for its own negligence. Therefore, we cannot rely on this case for persuasive authority for the reasoning urged by the trial court in granting summary judgment in favor of Falcon and Homestead on the indemnity issue.
For the reasons stated above, we find that the trial court erred as a matter of law in granting summary judgment in favor of Falcon and Homestead, finding that, under the terms of the indemnity clause in the contract, Breck owes a duty to indemnify Falcon under all circumstances. We find that the "agreement" did not indemnify Falcon and Homestead for any negligence attributable to Falcon. Therefore, no summary judgment should lie in Falcon and Homestead's favor. We do not address whether this "agreement" shielded Falcon from liability based on negligence attributable to others. Accordingly, the trial court judgment granting summary judgment in favor of Falcon and it insurer, Homestead, on the issue of indemnity is reversed and vacated and is remanded to the trial court for further proceedings.

INSURANCE POLICY LIMITS
Falcon and the plaintiffs, Guyon and Kathy Adams, appeal from the September 5, 1997 grant of summary judgment in favor of Homestead, finding that a limitation of coverage to $25,000.00 contained in the policy was valid and applicable in this case. Falcon and the plaintiffs essentially argue that the policy provision granting insurance coverage up to $1,000,000.00 for "specified operators" is ambiguous, claiming it is unclear whether such operators must necessarily be employees of Falcon. Falcon argues that the policy contemplated full coverage to drivers who have permission to utilize vehicles occasionally, such as Eric Herndon, in this case. Falcon also contends that any other interpretation would result in no coverage at all for nonspecified operators, violating the Louisiana Insurance Code which requires a policy to cover permittees.
In addition to urging that the policy provision regarding limitation of coverage to specified drivers is not clear as to whether it applies only to employees of Falcon, the plaintiffs also object to the fact that, in initial discovery responses, no list of specified operators was attached to the policy. They contend this created ambiguity as to whether anyone was entitled to the higher policy coverage. The plaintiffs argue that ambiguity is to be construed in favor of finding coverage. *289 For the following reasons, we find these arguments to be without merit.
An insurance policy is a contract which constitutes the law between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 93-0911 (La.1/14/94), 630 So.2d 759. The agreement will be enforced as written if the policy terminology expresses the intent of the parties. Oaks v. Dupuy, 26,729 (La.App. 2d Cir.4/5/95), 653 So.2d 165, writ denied 95-1145 (La.6/16/95), 655 So.2d 335; Krider v. Dixon, 609 So.2d 1089 (La. App. 2d Cir.1992); Smith v. Western Preferred Casualty Company, 424 So.2d 375 (La. App. 2d Cir.1982), writ denied 427 So.2d 1212 (La.1983); Niven v. Boston Old Colony Insurance Company, 94-348 (La.App. 5th Cir. 11/16/94), 646 So.2d 1108, writ denied 94-3067 (La.2/9/95), 649 So.2d 422. The parties' intent, as reflected by the words in the policy, determines the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, supra.
Ambiguity in an insurance contract must be resolved according to the general rules governing contract interpretation and the policy must be construed as a whole; one policy provision is not to be construed separately at the expense of disregarding other provisions. Breland v. Schilling, 550 So.2d 609 (La.1989); Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, supra; John Bailey Contractor, Inc. v. State Department of Transportation and Development, 439 So.2d 1055 (La.1983). Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered. Breland v. Schilling, supra. Although ambiguities should be construed in favor of the insured and against the insurer, courts lack authority to alter or strain policy terms under the guise of contractual interpretation when provisions are couched in unambiguous language. Oaks v. Dupuy, supra. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, supra; Valentine v. Bonneville Insurance Company, 96-1382 (La.3/17/97), 691 So.2d 665.
Absent a conflict with statutory provisions, or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, supra; Parker v. American Guaranty & Liability Insurance Company, 93 1556 (La.App. 1st Cir. 5/20/94), 637 So.2d 788; Smith v. Western Preferred Casualty Company, supra; Hedgepeth v. Guerin, 96 1044 (La.App. 1st Cir. 3/27/97), 691 So.2d 1355. Equivocal provisions seeking to narrow the insurer's obligation are to be strictly construed against the insurer, since there are prepared by the insurer and the insured has no voice in the preparation. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, supra. It is not the province of the court to I change the terms of a contract which has been entered into, even though it may be a harsh and unreasonable one; nor will the dictates of equity be followed if by so doing the terms of the contract are ignored, for the folly or wisdom of a contract is not for the court to pass upon, its terms, however, onerous they may be, must be enforced if such is the clear meaning of the language used, and the intention of the parties in using that language. Moore v. Liberty Mutual Insurance Company, 149 So.2d 192 (La.App. 3d Cir.1963). The determination of whether a contract is clear or ambiguous is a question of law. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, supra.
In the present case, the insurance contract between Falcon and Homestead provides *290 liability commercial auto coverage up to $1,000,000.00 per accident, but that coverage is limited by the endorsement concerning "specified operators." Approximately fortyeight vehicles or pieces of equipment are covered by this policy. However, the policy contains an endorsement limiting coverage for nonspecified operators. The endorsement provides in pertinent part:
In consideration of the premium charged for the policy to which this endorsement applies, it is agreed that the policy limits afforded by this policy, and all endorsements attached hereto, shall apply only to any claim arising from an accident which occurs while any covered automobile is being driven or operated by a specified driver.
A specified operator shall be defined as any licensed operator or driver specifically listed on your application for insurance with respect to this policy and, further, any additional specified operators which may subsequently be added to the policy in the manner hereinafter set forth. You shall notify us in writing of the name and drivers licence number of any such additional specified operator within 15 days of such individual's employment by you. In the event that you fail to give us such notice, the individual concerned shall not be a specified operator under this policy.
The policy limits afforded by this policy for any claim arising out of an accident involving the operation of a covered automobile by an individual, otherwise covered by this policy, who does not qualify as a specified operator shall be the minimum statutory limits required by the state in which said automobile is being operated at the time of such accident. You agree to reimburse us should we be required to pay any such claim in excess of such applicable minimum statutory limits which arises out of any accident which occurs while any covered automobile is being driven or operated by a non-specified operator.
A list of specified operators attached to the policy contains the names of more that forty persons covered by the terms of the endorsement and insurance policy. However, it is undisputed that Eric Herndon, who was not an employee of Falcon, is not on the specified operator list. Falcon and the plaintiffs argue that the endorsement is ambiguous because it is unclear whether the limitation applies only to employees of Falcon. They interpret the policy as intending that the limitation of coverage to statutory minimum limits applies only to employees of Falcon who are not listed as specified operators. They contend that third party permittees, such as Eric Herndon, are covered to the full amount of the $1,000,000.00 policy limit. Falcon contends that the construction of the endorsement urged by Homestead results in no insurance whatever to permittees, in violation of Louisiana law which requires minimum coverage. La. R.S. 32:900.
According to Falcon and the plaintiffs, the minimum policy limits apply only to individuals who have been employed by Falcon for more than fifteen days and whose names and driver's license numbers have not been furnished in writing to Homestead. Otherwise, the $1,000,000.00 coverage is available to specified operators of vehicles and to permittees such as Eric Herndon. They contend that the ambiguity as to whether the limitation applies only to employees of Falcon precludes summary judgment in this case.
The trial court was correct in rejecting these arguments. Our reading of the policy and the limiting endorsement fails to reveal the ambiguity alleged by Falcon and the plaintiffs. As found by the trial court, the policy reflects that the parties contracted for $1,000,000.00 in coverage for specified operators of the numerous vehicles and equipment listed in the policy. Further, the policy provided for the addition of specified operators to coverage under the policy. The endorsement provides that anyone who is not listed as a specified operator under the policy, is covered, but only to the statutory minimum limits required by the state in which the vehicle was being operated at the time the accident occurred. This is the category into which Eric Herndon falls. We find that this language is clear and unambiguous and we find that the trial court did not err as a matter of law in so finding. To find otherwise would be to interpret the policy in an unreasonable or strained manner. However *291 harsh the result of this contract may be for Falcon, Homestead had the right to impose conditions upon the obligation it contractually assumed which are not in conflict with statutory provisions or public policy. In the present case, no such conflict has been demonstrated in the endorsement limiting the higher amount of coverage to "specified operators" as that term is defined in the policy. It is undisputed that this accident occurred in Arkansas and that the statutory minimum for liability insurance in that state is $25,000.00 per occurrence.
The plaintiffs also argue in their brief that there is some question as to whether the list of specified operators was attached to the original insurance policy. This question arose when the list of drivers was omitted on the copy of the policy submitted by Homestead in its original discovery response. However, the record reflects that the list of drivers was simply omitted in the initial discovery response and was provided later when the omission was discovered. This omission creates no ambiguity in construing the insurance endorsement at issue here.
Therefore, the trial court was correct in granting summary judgment in favor of Homestead Insurance Company, finding that the insurance policy limit in this case is $25,000.00.

CONCLUSION
For the reasons stated above, we reverse the trial court decision of August 4, 1997, granting summary judgment in favor of Falcon Equipment Corporation and its insurer, Homestead Insurance Company, and against Breck Construction Company and its insurer, Audubon Insurance Company, on the issue of indemnity. We find that the indemnity clause in the agreement between the parties did not adequately convey the intent to indemnify Falcon for its own negligence. Accordingly, the summary judgment in favor of Falcon is reversed and vacated and the matter is remanded to the trial court for further proceedings.
We affirm the trial court decision of September 5, 1997, granting summary judgment in favor of Homestead Insurance Company, finding that its liability is limited to $25,000.00, under the terms of its insurance policy with Falcon Equipment Corporation, in the event Falcon is found liable in this matter. Costs in this court are to be equally divided between Guyon and Kathy Adams, Falcon Equipment Corporation and Homestead Insurance Company.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.
STEWART, J., concurs.