# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 11-1355

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, ET AL.**

**VERSUS**

**NORCOLD, INC., ET AL.**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2009-3278, DIV. "A"
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

**********

**JAMES T. GENOVESE
JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, James T. Genovese, and Shannon J. Gremillion, Judges.

Gremillion, J., concurs in the result.

**AFFIRMED IN PART; REVERSED IN PART;
AND RENDERED.**

Robert I. Siegel
John E.W. Baay, II
Elizabeth A. Chickering
Gieger, LaBorde & Laperouse, LLC
701 Poydras Strett, Suite 4800
New Orleans, Louisiana 70139-4800
(504) 561-0400
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Norcold, Inc., American Home Assurance Company,
    and National Union Fire Insurance Company of
    Pittsburgh, Pennsylvania

Louis Charles LaCour, Jr.
Raymond P. Ward
Adams & Reese LLP
One Shell Square
701 Poydras, Suite 4500
New Orleans, Louisiana 70139
(504) 585-0328
COUNSEL FOR DEFENDANTS/ APPELLANTS:
    American Home Assurance Company, and
    National Union Fire Insurance Company of
    Pittsburgh, Pennsylvania

Henry D.H. Olinde, Jr.
Olinde & Mercer
8562 Jefferson Hwy., Suite B
Baton Rouge, Louisiana 70809
(225) 240-7297
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Norcold, Inc.

W. Ransom Pipes
Dustin G. Flint
Hannah, Colvin, & Pipes, LLP
2051 Silverside Drive, Suite 260
Baton Rouge, Louisiana 70808
(225) 766-8240
COUNSEL FOR PLAINTIFFS/APPELLEES:
    State Farm Mutual Automobile Insurance Company
    and State Farm Fire and Casualty Company

Barry L. Domingue
Barry L. Domingue, LLC
122 Representative Row
Post Office Box 80112
Lafayette, Louisiana 70598
(337) 781-7486
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Ronald Semar and Dolores Semar

**GENOVESE, Judge.**

## FACTS AND PROCEDURAL HISTORY

In the early morning hours of December 4, 2008, a motor home caught fire due to a defective refrigeration unit. The fire destroyed the motor home and adjacent building, together with all contents therein, all of which were owned by Ronald and Dolores Semar. The Semars' insurers, State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company (collectively State Farm), paid the Semars' property damage claims pursuant to their respective policies. State Farm filed this subrogation claim against Norcold, Inc. (Norcold) and Newmar Corporation (Newmar), alleging that the fire was caused by the defective refrigeration unit that was manufactured by Norcold and installed by Newmar.

Alleging that the amount of their loss exceeded their insurance coverage, the Semars intervened against Norcold, Newmar, and Dixie RC Superstores, L.L.C.,[1] seeking to recover the uninsured losses and general damages they allegedly sustained. Both State Farm and the Semars also asserted claims for penalties and attorney fees against Norcold's liability insurers, American Home Assurance Company (AHAC) and National Union Fire Insurance Company of Pittsburgh, Pennsylvania (NUFIC). With respect to available insurance coverage, Norcold had a $500,000.00 self-insured retention (SIR); AHAC, the first excess insurer, provided $1,500,000.00 in liability coverage after depletion of the SIR amount; and, NUFIC, the second excess insurer,[2] provided $25,000,000.00 in liability coverage in the event the SIR and AHAC policy limits were exhausted.

---

[1] Newmar and Dixie RC Superstores, L.L.C., were dismissed from this lawsuit prior to trial.

[2] The adjustment of the claims on behalf of both AHAC and NUFIC was handled by Chartis Claims, Inc. (Chartis).

This matter proceeded to trial on the merits from April 4–8, 2010.[3] The trial court issued Reasons for Ruling on June 24, 2011, and signed a concomitant judgment on July 19, 2011. The trial court judgment awarded damages in favor of the Semars and State Farm in the following amounts:

**RONALD SEMAR and DOLORES SEMAR:**

| | |
|---|---|
| Loss of Museum Building | $266,276.00 |
| Loss of Antique Vehicles | $287,350.00 |
| Loss of Use of Museum Building | $52,000.00 |
| Loss of Collectibles | $233,919.00 |
| Demolition/ Debris Removal | $6,800.00 |
| Sales Tax | $26,230.00 |
| Ronald Semar General Damages | $150,000.00 |
| Dolores Semar General Damages | $75,000.00 |
| Total Damages | $1,097,575.00[4] |
| Penalties | $381,214.00 |
| Attorney Fees | $150,000.00 |
| Total Damages, Penalties and Attorney Fees | $1,628,789.00 |

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY:**

| | |
|---|---|
| 1958 Impala | $92,500.00 |
| 1950 Sedan | $30,000.00 |
| Museum Building | $102,724.00 |

[3]According to the trial court's Reasons for Ruling, "The Semars and State Farm filed a Motion for Summary Judgment on liability which was not opposed by the defendants. The motion was granted on September 7, 2010." Accordingly, damages and penalties were the only remaining issues to be tried.

[4] These damages were awarded by the trial court in favor of the Semars and against Norcold, AHAC, and NUFIC; whereas, the judgment for penalties and attorney fees was rendered against AHAC only.

| | | |
|---|---|---|
| Collectibles | | $847,495.00 |
| | Total Damages | $1,072,719.00[5] |
| Penalties | | $368,786.00 |
| Attorney Fees | | $150,000.00 |
| Total Damages, Penalties and Attorney Fees | | $1,591,505.00 |

On the claims for penalties and attorney fees, the trial court found "that the proofs of claim submitted by the Semars [and State Farm] obligated AHAC to make a written offer to settle, but did not obligate NUFIC to make an offer. Further, any failure on the part of NUFIC to make a written offer was not arbitrary, capricious, or without probable cause." Therefore, the trial court rendered judgment awarding penalties and attorney fees in the amount of $531,214.00 in favor of the Semars and penalties and attorney fees in the amount of $518,786.00 in favor of State Farm against AHAC only. From this judgment, Norcold, AHAC, and NUFIC have appealed; both the Semars and State Farm have filed an answer to appeal.

## ASSIGNMENTS OF ERROR

On appeal, Norcold, AHAC, and NUFIC,[6] present the following errors for our review:

1. The district court committed reversible error in its conclusion that La.R.S. 22:1892 authorizes penalties to be assessed against an insurer in a third-party claim situation.

2. The district court committed manifest error in its conclusion that AHAC failed to make an offer of settlement within a reasonable time after receiving a satisfactory proof of loss, for reasons that were arbitrary, capricious, or without probable cause.

---

[5] These damages were awarded by the trial court in favor of State Farm and against Norcold, AHAC, and NUFIC; whereas, the judgment for penalties and attorney fees was rendered against AHAC only.

[6] Appellants, Norcold, AHAC, and NUFIC, have collectively filed briefs in this appeal. Therefore, for brevity, we shall refer to them as "Norcold" unless a distinction is required.

3. The district court's combined award of $225,000[.00] for mental anguish in a property damage case so far exceeds permissible awards in Louisiana as to constitute manifest error.

## LAW AND DISCUSSION

*Assignment of Error Number One*

In its first assignment of error, Norcold asserts that the trial court erroneously concluded that La.R.S. 22:1892 provides for the imposition of penalties against an insurer for its failure to make an offer to settle third-party claims. This issue requires the interpretation of a statute; thus, it raises a question of law. *Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev.*, 10-193 (La. 1/19/11), 56 So.3d 181 (citing *Thibodeaux v. Donnell*, 08-2436 (La. 5/5/09), 9 So.3d 120). Therefore, the appropriate standard to be applied by this court is the de novo standard of review. *Id.*

Louisiana Revised Statutes 22:1892[7] (emphasis added), provides in pertinent part as follows:

> A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:1811, 1821, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. The insurer shall notify the insurance producer of record of all such payments for property damage claims made in accordance with this Paragraph.
>
> (2) All insurers issuing any type of contract, other than those specified in R.S. 22:1811, R.S. 22:1821, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any third party property damage claim and of any reasonable medical expenses claim due any bona fide third party claimant within thirty days after written agreement of settlement of the claim from any third party claimant.
>
> (3) Except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim and of a claim for reasonable medical expenses within fourteen days after notification of loss by the claimant. In the case of catastrophic loss, the insurer shall

---

[7]Louisiana Revised Statutes 22:658 was formally renumbered La.R.S. 22:1892 in 2008. Consequently, La.R.S. 22:658 is referenced in certain of the jurisprudence discussed herein.

4

initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant except that the commissioner may promulgate a rule for extending the time period for initiating a loss adjustment for damages arising from a presidentially declared emergency or disaster or a gubernatorially declared emergency or disaster up to an additional thirty days. Thereafter, only one additional extension of the period of time for initiating a loss adjustment may be allowed and must be approved by the Senate Committee on Insurance and the House Committee on Insurance, voting separately. Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1973.

(4) All insurers **shall** make a written offer to settle any property damage claim, **including a third-party claim**, within thirty days after receipt of satisfactory proofs of loss of that claim.

B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or **failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4),** respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2), when such failure is found to be arbitrary, capricious, or without probable cause, **shall subject the insurer to a penalty**, in addition to the amount of the loss, of fifty percent damages on the amount found to be due **from the insurer to the insured**, or one thousand dollars, whichever is greater, **payable to the insured**, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

In this case, neither the Semars nor State Farm are insureds of AHAC or NUFIC; rather, they are third-party claimants whose claims fall within the ambit of La.R.S. 22:1892(A)(4). Pursuant to La.R.S. 22:1892(A)(4), the insurers were required to make a written offer to settle the claims of the Semars and State Farm "within thirty days after receipt of satisfactory proofs of loss of that claim." The question presented in this case is whether the insurer's failure to do so subjects them to the imposition of penalties under La.R.S. 22:1892(B)(1). We conclude,

5

based upon the statutory language, the historical amendments, the legislative intent, and the jurisprudence that La.R.S. 22:1892(B)(1) does provide for an award of penalties and attorney fees in favor of third-party claimants against an insurer who fails to make an offer of settlement after receiving satisfactory proof of loss, if the insurer's failure to pay is "arbitrary, capricious, or without probable cause."

Looking first to the language of the statute, it undisputedly includes "a third-party claim" twice within the relevant provisions. The statutory duty of an insurer, found in La.R.S. 22:1892(A)(4), provides an action for third-party claimants that arise in connection with "a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim." This provision not only makes the insurer's duty mandatory in nature by its use of the word "shall," but it also expressly includes "third-party-claims." Likewise, and wholly consistent therewith, in the event the insurer is found to be "arbitrary, capricious, or without probable cause," the corresponding penalty portion of the statute, found in La.R.S. 22:1892(B)(1), not only makes the imposition of a penalty mandatory in nature by its use of the word "shall[,]" but it also expressly "include[es] a third-party claim." Despite this language appearing in both La.R.S. 22:1892(A)(4) and La.R.S. 22:1892(B)(1), Norcold contends that the statute does not provide for the imposition of a penalty in favor of a third-party claimant. However, to accept Norcold's contention is to negate two mandatory provisions covering "third-party claims" contained within La.R.S. 22:1892. The result would be to render the mandatory duty of the insurer toward "third-party claims" meaningless and would completely ignore the inclusion of "third-party claims" in the penalty provision as a consequence of an insurer's failure to abide by that duty.

Norcold's argument that "[t]here is no statutory penalty for the failure of an insurer to make an offer to settle claims made by third-parties" is based on the words "due from the insurer to the insured" and "payable to the insured" which are used in La.R.S. 22:1893(B)(1), where it provides for the calculation of the amount of the penalty. Based upon these phrases, Norcold concludes that "Ronald Semar, Dolores Semar, and State Farm were not 'insureds' of AHAC, a prerequisite for claiming penalties against an insurer." However, to construe the statute in the manner proposed by Norcold not only ignores the statute's other express provisions (as discussed above), it also ignores the historical amendments, and it runs afoul of the legislative intent and the jurisprudence interpreting same.

Louisiana Revised Statutes 22:1892 was formerly designated La.R.S. 22:658 and has been amended many times over the years.[8] Prior to 1989 La. Acts No. 638, §1, La.R.S. 22:658 did not provide a cause of action for third-party claimants. Additionally, the penalty available to an insured was "ten percent damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney fees." In the 1989 revision, La.R.S. 22:658(A) was amended to include (A)(1)–(A)(4). Specifically, La.R.S. 22:658(A)(2) was drafted to include a provision for "any third party property damage claim" and "any reasonable medical expenses claim due any bona fide third party claimant within thirty days after written agreement of settlement of the claim from any third party claimant." Additionally, La.R.S. 22:658(B)(1) then provided that "[f]ailure to make such payment . . . after written agreement or settlement with a first or third party claimant" would subject the insurer to a penalty "of ten percent damages on the total amount of the loss, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, together with all reasonable attorney

---

[8] Only those amendments germane to our analysis are discussed herein.

7

fees . . . ." The consequence of this amendment was that, for the first time, a third-party claimant had an action for an insurer's failure to pay property damages and reasonable medical expenses within thirty days after a written settlement agreement, and an insurer became subject to a penalty in favor of a third-party. La.R.S. 22:658(A)(2) and (B)(1). Notably, despite the inclusion of "third-party claimant" in both paragraphs, the language addressing the calculation of the amount of the penalty still included "payable to the insured." La.R.S. 22:658(B)(1).

Louisiana Revised Statutes 22:658(B)(1) was again amended in 1990 pursuant to 1990 La. Acts No. 262, §1. This amendment, among other changes, substituted "agreement or settlement as provided in R.S. 22:658(A)(2)" for the more general language of "agreement or settlement with a first or third party claimant[.]" This revision expressly made La.R.S. 22:658(A)(2) violations subject to the penalty provision.

The legislature later passed 2003 La. Acts No. 790, §1, which further expanded the statute by amending La.R.S. 22:658(A)(4) to address the insurer's duty when presented with satisfactory proof of loss to include a third-party property damage claim. Louisiana Revised Statutes 22:658(B)(1) was also thereby amended to make available an equivalent penalty for third party claims arising under La.R.S. 22:658(A)(4), as was already available to third-party claimants for La.R.S. 22:658(A)(2) violations. Again, the penalty calculation provision and the language "payable to the insured" remained inexplicably unchanged despite yet another expansion of both the right and the remedy of third-party claimants.

Finally, there were two additional amendments to La.R.S. 22:658(B)(1), one in 1992 and the second in 2006, which changed the penalty calculation. In 1992, the legislature passed 1992 La. Acts No. 879, §1, which changed "ten percent

8

damages on the total amount of the loss, or one thousand dollars, whichever is greater" to "ten percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater[.]" In 2006, 2006 La. Acts No. 813, §1, changed the percentages provided in La.R.S. 22:658(B)(1) to substitute "fifty percent" for "twenty-five percent" and to insert "as well as reasonable attorney fees and costs." Notably, in neither of these revisions was the language "payable to the insured" altered. Moreover, in 1992, "due from the insurer to the insured" was in fact added to the damage calculation.

In summary, the legislative history of the statute reveals that beginning in 1989, La.R.S. 22:658(A)(2) violations encompassed third-party claimants and a corresponding penalty provision for same first appeared in La.R.S. 22:658(B)(1). As of 2003, La.R.S. 22:658(A)(4) violations also encompassed third-party claimants and a corresponding penalty provision for these violations appeared for the first time in La.R.S. 22:658(B)(1). The creation of these two distinct provisions for third-party claims and corresponding penalty provisions which occurred at two different times over the course of five years is certainly indicative of the legislative intent to provide both an action and a penalty in favor of third-party claimants for violations of what is now La.R.S. 22:1892(A)(2) and (A)(4). The language "payable from the insurer to the insured" and "payable to the insured" that appears in La.R.S. 22:1892(B)(1), which was not specifically addressed by the legislature despite its alterations of the penalty calculation in other respects, does not negate the mandatory statutory duty of the insurer and the action of a third-party claimant pursuant to La.R.S. 22:1892(A)(4), nor the express and mandatory[9] statutory penalty provided in La.R.S. 22:1892(B)(1).

---

[9] We recognize that the penalty is mandatory only "when the failure is found to be arbitrary, capricious, or without probable cause[.]"

9

The jurisprudence further supports our interpretation and legal conclusion. Our supreme court, in *Theriot v. Midland Risk Insurance Co.*, 95-2895, p. 8 (La. 5/20/97), 694 So.2d 184, 189, recognized that "[t]he 1989 amendments left some doubt as to whether third-party claimants could also seek penalties and attorney fees under La. R.S. 22:658, (A)(4) for an insurer's failure to make an offer of settlement." This doubt was addressed when the legislature, in 2003, amended La.R.S. 22:658(A)(4) and (B)(1) to expressly provide that La.R.S. 22:658(A)(4) included third-party claims and, moreover, that the La.R.S. 22:658(B)(1) penalties were available to third-party claimants by the inserting of the language "including a third-party claim[.]" We agree with the trial court's reasoning that "[d]espite the fact that Act 790 did not add the phrase 'or third[-]party claimant' after 'payable to the insured[,]' the legislative intent in amending the statute was clearly to provide penalties for third[-]party claimants when the insurer fails to make timely written offers to settle property damage claims."

In brief, State Farm points out that the supreme court, in *Theriot*, was applying pre-2003 language of the statute, and it argues that had *Theriot* been applying post-2003 language, the court would have found that penalties are available for La.R.S. 22:1892(A)(4) violations. Analyzing the *Theriot* rationale, State Farm points out that the court acknowledged that although the 1989 amendments left doubt as to the availability of third-party claimants for violations of La.R.S. 22:658(A)(4), when the statue was amended in 1990, La.R.S. 22:658(B)(1) was altered to provide that penalties could be imposed for violations of La.R.S. 22:658(A)(2), but it did not include (A)(4). Therefore, the court reasoned that "the legislature amended [La.R.S. 22:658(B)(1)] to make it clear that [La.R.S. 22:658(A)(4)] was not a basis for a penalty action by *third-parties*." *Theriot*, 694 So.2d at 189. However, State Farm concludes that "under the same

10

rational[e], it is clear that the *Theriot* court would have found a cause of action for penalties and attorney fees by third parties for [La.R.S. 22:1220(A)(4) violations] under the 2003 amended statute, at issue herein[,]" since the 2003 amendment to [La.]R.S. 22:1892 expressly provides 'including a third[-]party claim' in both [La.R.S. 22:1892(A)(4) and (B)(1)] and then specifically linked [La.R.S. 22:1982(A)(4)] to the [(B)(1)] penalties."

Additional jurisprudence supports our conclusion herein, as courts have never interpreted La.R.S. 22:1892 in the manner Norcold proposes. To the contrary, courts have in fact applied the penalty provision of La.R.S. 22:1892(B)(1) to third-party claims brought pursuant to both La.R.S. 22:1892(A)(2) and (A)(4). This court, in *Morrison v. Alexandria Commons, LLC*, 09-652 (La.App. 3 Cir. 12/9/09), 25 So.3d 989, applying La.R.S. 22:658, awarded both penalties and attorney fees to a third-party claimant. In *Bennett v. Laperouse and Son, Ltd.*, 09-1099, p. 5 (La.App. 1 Cir. 2/12/10), 35 So.3d 364, 367-68, the first circuit, citing La.R.S. 22:658, noted that "[t]he statute uses the mandatory term 'shall' and therefore leaves no room for discretion." The appellate court therefore reversed the trial court's ruling and held that the third-party claimant was entitled to a penalty under La.R.S. 22:658(B)(1).

Norcold is correct that *Morrison* and *Bennett* both involve third-party claims under La.R.S. 22:658(A)(2), presently La.R.S. 22:1892(A)(2), "a provision of the statute not at issue here." However, we agree with State Farm that Norcold "fails to even attempt an explanation [of] why third[-]party claimants under [La.R.S. 22:1892(A)(2) and (A)(4)] would somehow receive different treatments or awards under the penalty provisions of [La.R.S. 22:1892(B)(1),] when [(B)(1)] clearly applies equally to both and [it] makes no distinction in its application or the penalty to be awarded." We further agree with State Farm's conclusion that

11

"[o]bviously, there is no reason and the claims should be, and are, treated the same under [La.R.S. 22:1892(B)(1)]." Finally, we note that Norcold has not cited, nor is this court aware of, any case that has applied La.R.S. 22:1892(A)(4) and has denied the recovery of a penalty under La.R.S. 22:1892(B)(1).

Additionally, the second circuit has acknowledged that a third-party claimant is entitled to a penalty for an insurer's violation of La.R.S. 22:658(A)(4). In *Riser v. Shelter Mutual Insurance Co.*, 43,617, p. 1 (La.App. 2 Cir. 10/29/08), 997 So.2d 675, 677, the plaintiffs "alleged that Shelter had failed to make a written offer to settle the property damage claim within thirty days, and that statutory penalties should be imposed." The trial court agreed and awarded a penalty. On appeal, the second circuit recognized that "[t]he Risers' claims for penalties and attorney's fees represent[ed] a third-party claim against the insurer, Shelter, since the Risers were not the insured parties to the contract." *Id*. at 678. Ultimately, the *Riser* court reversed, stating that it did "not find from the meager evidence in the record that the predicate for the claimed penalties and attorney[] fees was ever attempted by the Risers in the form of their presentation of satisfactory proof of loss to Shelter." *Id*. at 679. However, the second circuit's holding "that the award of penalties and attorney[] fees was improper" was based upon a factual finding of the court, as opposed to legal error. *Id*. at 680.

In reaching our conclusion herein, we are mindful of the instruction of our supreme court on interpreting statutes found in *Sultana Corporation v. Jewelers Mutual Insurance Co.*, 03-360, pp. 3-4 (La. 12/3/03), 860 So.2d 1112, 1115-16, wherein the court stated as follows:

> The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. *Touchard v. Williams*, 617 So.2d 885 (La.1993). Principles of judicial interpretation of statutes are designed to ascertain and enforce the intent of the Legislature in enacting the

statute. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695 (La.6/29/01), 808 So.2d 294, *citing Stogner v. Stogner*, 98-3044 (La7/7/99), 739 So.2d 762, 766; *State v. Piazza*, 596 So.2d 817, 819 (La.1992). The fundamental question in all cases of statutory construction is legislative intent and the reasons that prompted the Legislature to enact the law. *Succession of Boyter*, 99-0761 (La.1/7/00), 756 So.2d 1122, 1128. When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further inquiry made in search of the legislative intent. CIV.CODE ANN. art. 9; LA.REV.STAT. ANN. § 1:4.

The meaning and intent of a law is determined by considering the law in its entirety and all other laws concerning the same subject matter and construing the provision in a manner that is consistent with the express terms of the statute and with the obvious intent of the lawmaker in enacting it. *Boyter*, 756 So.2d at 1129; *Stogner*, 739 So.2d at 766. The statute must therefore be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the Legislature had in enacting it. *Boyter*, 756 So.2d at 1129. Courts should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless, if that result can be avoided. *Langlois v. East Baton Rouge Parish Sch. Bd.*, 99-2007 (La.5/16/00), 761 So.2d 504, 507; *Boyter*, 756 So.2d at 1129. Furthermore, "the object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result." *First Nat'l Bank of Boston v. Beckwith Mach. Co.*, 94-2065 (La.2/20/95), 650 So.2d 1148, 1153 (quoting *Smith v. Flournoy*, 238 La. 432, 115 So.2d 809, 814 (1959)). The starting point in the interpretation of any statute is the language of the statute itself. *Touchard*, 617 So.2d at 888.

For the foregoing reasons, we conclude that La.R.S. 22:1892(B)(1) provides for an award of penalties in favor of a third-party claimant against an insurer for a violation of L.R.S. 22:1892(A)(4).

## Assignment of Error Number Two

We shall now address Norcold's second assignment of error, that the trial court was manifestly erroneous in concluding that AHAC "failed to make an offer of settlement within a reasonable time after receiving a satisfactory proof of loss, for reasons that were arbitrary, capricious, or without probable cause." Norcold disputes both the trial court's finding of when satisfactory proof of loss was

received and the trial court's conclusion that its failure to pay was arbitrary, capricious, or without probable cause. These determinations by the trial court are factual in nature; thus, they are reviewed under the manifest error/clearly wrong standard of review. *Reed v. State Farm Auto. Ins. Co.*, 03-107 (La. 10/21/03), 857 So.2d 1012.

> Our supreme court has addressed satisfactory proof of loss as follows:

> It is well settled that a "satisfactory proof of loss" is only that which is "sufficient to fully apprise the insurer of the insured's claims." *McDill* [v. *Utica Mutual Insurance Co.*, 475 So.2d 1085, 1089 (La.1985)]. *See also Hart v. Allstate Ins. Co.*, 437 So.2d 823, 828 (La.1983). In addition, with regard to the form of a proof of loss, this court has stated that proof of loss is a "flexible requirement to advise an insurer of the facts of the claim," and that it need not "be in any formal style." *Sevier v. U.S. Fid. & Guar. Co.*, 497 So.2d 1380, 1384 (La.1986). "As long as the insurer receives sufficient information to act on the claim, 'the manner in which it obtains the information is immaterial.'" *Id.*

*La. Bag Co., Inc. v. Audubon Indem. Co.*, 08-453, pp. 23-24 (La. 12/2/08), 999 So.2d 1104, 1119.

On the question of satisfactory proof of loss, citing *McDill*, 475 So.2d 1085, the trial court correctly stated that:

> [t]o present 'satisfactory proofs of loss' for this claim, the plaintiffs must show that the insurer received sufficient facts to establish that (1) Norcold was at fault; (2) that such fault gave rise to damages; (3) the extent of those damages[,] and ([4]) that the damages exceeded the $500,000.00 SIR for AHAC and $2,000,000.00 for NUFIC.

As to the first element, liability was determined shortly after the fire occurred, and it was never seriously challenged thereafter. As noted by the trial court, the cause of the fire was confirmed by "four cause-and-origin experts, one of whom was Norcold's expert[,]" all of whom concluded that the fire was caused by the defective Norcold refrigerator. Thus, liability was established "by the time the claim was reported to Chartis on April 14, 2009." The real question surrounding satisfactory proof of loss was at what point were the extent of damages established

14

and, as a corollary thereto, whether the damages exceed the $500,000.00 and $2,000,000.00 threshold amounts. In making this determination, the trial court divided the items which were destroyed in the fire into (1) the vehicles, (2) the building, and (3) the collectibles. Additionally, the trial court was aided by stipulations of the parties that were introduced at trial, which included an attachment setting forth a time line of the relevant activities in the handling of the claim.

With respect to the vehicles, the trial court determined that satisfactory proof of loss was provided by November 27, 2009. On May 4, 2009, State Farm provided proof of insurance and proof of ownership of the vehicles. Documentation of the amounts paid by State Farm to the Semars, photographs of the vehicles, and salvage information was also included. The defense expert issued his report appraising the vehicles on July 14, 2009. Although, arguably, this information was sufficient to fully apprise AHAC of the extent of the damages to the vehicles, AHAC was provided additional information on November 27, 2009, when the Semars supplied photographs of the vehicles along with documentation on their other losses. We, therefore, find no manifest error in the trial court's determination that "[b]y November 27, 2009[,] the defendants had sufficient facts to apprise them of both [State Farm's] and the Semars' claims for the vehicles."

The amount of the loss sustained by the destruction of the building was more readily determinable. With regard to the satisfactory proof of loss of the building, we adopt the following reasoning of the trial court as our own.

> On June 10, 2009, [State Farm] sent Gallagher Bassett[10] a building estimate in the amount of $129,423.24 prepared on Exactimate software. The estimate was incomplete in that it did not include the cost for electrical, plumbing, interior walls, cabinets, or

---

[10] Gallagher Bassett Services, Inc. was the third-party administrator responsible for managing Norcold's $500,000.00 SIR.

security systems. It was, however, substantially higher than the $102,724[.00] that [State Farm] had paid the Semars for damage to the building. Defendants argue that the only estimates that were produced for the building portion of the Semars' claim prior to their receipt of Al Mallet's[11] report on September 29, 2010 were State Farm's estimate of $129,423.24 and Region's estimate of $115,897[.00]. This simply is not true.

On November 27, 2009, the Semars submitted estimates to replace the building. The estimates included: (1) an estimate from Fremin Design Build General Contractors in the amount of $263,200[.00] for re-constructing the basic frame of the building, (2) an estimate from J. Lewis Construction in the amount of $233,388[.00] for finishing out the interior of the building, including finishing the interior walls, installing ceilings, building cabinets and showcases and replacing the electrical system, (3) another estimate for replacing the electrical system from A&P Electrical Services, Inc. in the amount of $94,500[.00], (4) an estimate from [T&T] Maintenance in the amount of $19,875[.00] for replacing the HVAC system and (5) an estimate for ADT Security in the amount of $10,826.71 for replacing the security system. . . . As of November 27, 2009, Norcold had all of the specifications and detailed information about the building that it needed to evaluate the claim for the building. The defendants' argument that these estimates do not constitute satisfactory proof of loss because they are not "fair market appraisals" is without merit. Replacement value less depreciation is one method of determining damages for loss of property. Chartis had sufficient facts of the extent of the damage caused by the loss of the building as of November 27, 2009.

Clearly, by November 2009, there were estimates of the building that exceeded the amount of State Farm's payment to the Semars. These estimates, coupled with the photographs that had been provided and knowledge that the building was a total loss, were sufficient to establish satisfactory proof of loss as to the claim for the building.

On the claim for the collectibles contained within the building, we agree with Norcold that it was "extraordinary[.]" The trial court acknowledged the uniqueness of the contents stating, "It is true that the evaluation of the memorabilia and collectibles was complicated." However, we find no manifest error in the trial

---

[11]Alexis "Al" Mallet was qualified by the trial court as an expert in general construction, building estimates, and values.

court's conclusion that sufficient proof of loss of the collectibles was provided by February 23, 2010. Again, we find the trial court's written reasons accurately reflect the evidence in the record, and we adopt the following reasoning of the trial court as our own:

> On November 27, 2009, the Semars submitted to Henry Olinde and Susan Eccles, attorneys for Norcold, a handwritten itemized list of the contents of the building along with detailed descriptions, photographs and the purchase price of each item which totaled $979,182.12. The list apprised the defendants of exactly what the Semars claimed to be lost. Most records and receipts were destroyed by the fire[,] and so Mr. Semar had to use the photographs and his memory to complete the list. After receiving the list, [State Farm] put all items on a spread sheet and determined that the value of the contents exceeded the limits of their policy. On February 12, 2010, it therefore paid the Semars the policy limits which was $847,495.00. At that point Chartis had evidence that not only the Semars but also [State Farm] evaluated the claim at over $847,495[.00].

> The court finds that the handwritten itemized list prepared by Mr. Semar represents a more than adequate proof of loss, which fully apprised AHAC/NUFIC of his claim. . . . Once AHAC/NUFIC received the list, it knew what Mr. Semar paid for each item in the collection. Further since nearly all of the items were collectibles, they could be presumed to maintain their value, if not appreciate. Upon its receipt of the list, AHAC/NUFIC had knowledge of the facts of the claim and the extent of the damage. . . .

Therefore, the trial court ultimately concluded that by the end of November 2009, "Chartis had sufficient proof of loss of the extent of Semars' claim for the collectibles. Chartis had sufficient proof of [State Farm's] subrogation claim for the building contents when State Farm submitted the claim to on [sic] defendants on February 23, 2010." The trial court's determination as to satisfactory proof of loss of the collectibles is not manifestly erroneous or clearly wrong.

Finally, the trial court considered the existence of Norcold's $500,000.00 SIR, which had to be exhausted before AHAC's coverage. On March 24, 2010,[12]

---

[12] We note that, in brief, Norcold asserts that the trial court's "conclusion that AHAC had satisfactory proof of loss as of March 24, 2010[,] is manifestly erroneous." This is not an accurate statement. To the contrary, the trial court made a finding of fact and provided a date of satisfactory proof of loss as to each particular claim, namely, the vehicles, the building, and the

Gallagher Basset received authority from Norcold to "to use the entire remaining balance of Norcold's SIR to resolve the claims." That information was forwarded to Chartis on the same date. Thus, the trial court found, "By March 24, 2010, the date Norcold gave Chartis permission to use the SIR, Chartis had sufficient proof of loss on all claims affecting the Semars['] property" and that the SIR was exhausted; hence, this triggered the second layer of coverage provided by AHAC.

Despite satisfactory proof of loss, the first written settlement offer made to the Semars was on August 9, 2010. On September 24, 2010, State Farm received its first written settlement offer dated September 22, 2010. Obviously, these written settlement offers were not made within thirty days of receipt of satisfactory proof of loss as required by La.R.S. 22:1892(B). Thus, the remaining issue we must decide is whether the failure of the insurer to abide by its statutory duty within the time provided was arbitrary, capricious, or without probable cause.

Our supreme court, in *Louisiana Bag,* 999 So.2d at 1114 (footnote omitted), stated the following:

> Turning now to what is arbitrary, capricious or without probable cause, this court has previously stated in *Reed v. State Farm Auto. Ins. Co.*, 03-0107 (La.10/21/03), 857 So.2d 1012, that the New Oxford English American Dictionary defines an "arbitrary" act as one "'based on random choice or personal whim, rather than reason or system,'" and capricious as "'given to sudden and unaccountable changes in behavior.'" *Id*. at 1020. The phrase "arbitrary, capricious, or without probable cause" is synonymous with "vexatious," and a "vexatious refusal to pay" means "unjustified, without reasonable or probable cause or excuse." *Id*. at 1021. See also *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250, 1253 (La.1993). Both phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense. *Reed*, 857 So.2d at 1021. See also *La. Maint*., 616 So.2d at 1253.

collectibles. The March 24, 2010 date mentioned by the trial court reflects the particular date that Chartis had authority to use Norcold's SIR. In the words of the trial court, "[b]y March 24, 2010, the date Norcold gave Chartis permission to use the SIR, Chartis had sufficient proof of loss on all claims affecting the Semars['] property." The receipt of satisfactory proof of loss as to each particular claim had already been received.

In this case, after acknowledging the complicated nature of the evaluation of the memorabilia and collectibles, the trial court reasoned, "It would have been reasonable for Chartis to take more than the thirty days to evaluate the claim for the building and its contents and to make an offer." However, "What was not reasonable was for the insurers to take the itemized list and do nothing for six months. Their collectibles expert, Mr. Sanderson, inspected the site in the summer of 2009 but was not hired to evaluate the claim until May of 2010." Additionally, "Mr. Semar[,] who at trial proved to be the most knowledgeable expert on the kinds of memorabilia he collected, was not deposed until August 30, 2010." The trial court went on to note, "As late as June of 2010, Chartis used as an excuse for not making an offer to settle, the fact that the SIR had not been exhausted and liability had not been established." The trial court determined, and we agree, "[t]hat was not a good faith defense." Likewise, the fact that they were attempting to schedule a mediation conference was "not a valid excuse for failing to make an offer."

As summarized by the trial court, "Chartis had the claim twelve months before confirming coverage, thirteen months before confirming causation, eighteen months before raising and resolving comparative fault issues, six and a half months before hiring an expert to evaluate the collectibles, and one year before hiring an expert to estimate the building's value." For these reasons, we find no manifest error in the trial court's conclusion that AHAC's failure to make an offer of settlement within thirty days after receiving a satisfactory proof of loss was arbitrary, capricious, or without probable cause.

### Assignment of Error Number Three

In its third assignment of error, Norcold asserts that the trial court's general damage awards were an abuse of discretion. Norcold argues that "the law of

Louisiana is that there must be proof of actual mental anguish to support an award for damages in a property damage case" and that "there is very little record evidence of any such mental injury." We disagree.

When discussing the mental anguish award, the trial court stated in its Reasons for Ruling that it could "scarcely conceive of a set of facts which would justify a mental anguish award more than does the set of facts proven at the trial of the instant case." The trial court explained that:

> Mr. and Mrs. Semar spent 20 years collecting the items lost in the fire. They did their collecting together, traveling over 200,000 miles in the recreational vehicles.
>
> Mr. Semar personally and painstakingly arranged, maintained, and cared for the collection, spending hours each day in the museum. He took great pride in entertaining friends in the museum. Mr. Semar does not hunt, fish, or play golf. He described his collection as "[his] hobby and [his] love, except for [his] wife and family." Mr. Semar was in the process of selling his machine shop when the fire occurred. His retirement plan was to continue growing the collection and to spend time in the museum.
>
> Mrs. Semar testified that prior to the fire, they traveled a minimum of once per month, but usually more. She said that they enjoyed entertaining in the museum and driving the antique vehicles in Mardi Gras and Christmas parades. She aptly described the collection as a documentary of their lives together.

The Semars stood watching and crying as the fire destroyed their memorabilia and belongings; however, the mental anguish they suffered did not end on the night of the fire. As noted by the trial court, Mr. Semar "spent months rummaging through the remains, and preparing an inventory of all the items that he lost." The testimony of the Semars and their children confirmed the continuing emotional turmoil they experienced. Mrs. Semar testified that the fire resulted in the loss of what they "both truly loved." She described how "devastating" it was to watch the building burn because "it was a big part of [their] lives." Mrs. Semar testified that after the fire they were "trying to put [their] lives back together[,]"

20

and explained that "it's very difficult to have to face something like this and such a big loss at an old age." A daughter of the Semars, Jodie Mouton, testified that her parents have not been the same since the fire. She used words like "uproar" and "chaotic" to describe what should instead be peaceful lives at their age and in their golden years. Ms. Mouton testified that now her parents are "always worried about each other." Moreover, she stated that not only had her father's appearance changed, but, "his health, everything about him has changed."

In addition to the above, the trial court noted, "The property the Semars lost is not readily replaceable. . . . To the contrary, this collection cannot be replaced, as it included many rare and in some instances, one-of-a-kind collectibles, and it took 20 years of avid collecting to accumulate it." Based on this evidence, we cannot say that the trial court abused its discretion in awarding $150,000.00 in mental anguish to Mr. Semar and $75,000.00 in mental anguish to Mrs. Semar.

**SEMARS' ANSWER TO APPEAL**

*Damages for Loss of Use*

In their Answer to Appeal, the Semars' assert that the trial court "committed manifest error and abused [its] discretion in failing to award [them] loss of use damages for their museum, including the antique cars, antiques and memorabilia lost in the museum fire at issue in this litigation."[13] With respect to this issue, we agree in part and disagree in part.

The trial court's Reasons for Ruling set forth the manner in which the loss of use damages for the building were computed, stating as follows:

---

[13] We note that the Semars argue that "the Trial Court's failure to find that loss of use damages are a recoverable item of damages evidences an error of law." However, this statement is inaccurate. The trial court did, in fact, render an award for the loss of use of the building but declined to do so on the antique cars and collections. Therefore, at issue is whether the loss of use damages of $50,000.00 relating to the building and/or the $0.00 loss of use damages for the antique cars and collections constituted an abuse of discretion.

The Semars contend that they are entitled to damages for loss of use of the building in the amount of $4[,]000[.00] per month for thirteen months, or $52,000.00. Al Mallet testified that the rental value of the building would be in the range of $4[,]000.00. According to Mallet, it would take approximately eight months to reconstruct the building. Mr. Semar testified that the property was not "released" to him until May of 2009, or five months after the fire. Considering the fact that Mr. Semar was prevented from starting reconstruction for five months and the construction would take eight months, the Court finds that reasonable time to replace the building would be thirteen months.

Based upon Mr. Mallet's testimony, and noting that the building was not an income-generating asset, the trial court found "that a fair compensation for this loss is the $4[,]000.[00] monthly rental for thirteen months[,] or $52,000[.00]." Based upon these facts, we cannot say that this determination is an abuse of discretion.

As to the failure of the trial court to award loss of use damages on the collectibles, we likewise find no abuse of discretion. When considering the Semars' claim for the loss of use of the collectibles, the trial court reasoned, "Although the loss of the collection of memorabilia and antiques was a devastating loss to the Semars, the loss would better be quantified as mental anguish and inconvenience." Considering the evidence and the mental anguish award, we cannot say that the trial court abused its discretion in failing to award additional damages for the loss of use of the collectibles. Although, if sitting as the trier of fact, we may have awarded this as an additional element of damages, we cannot say that the failure of the trial court to do so was unreasonable or was an abuse of its discretion.

However, we reach a different conclusion on the Semars' claim for the loss of use of the antique vehicles. With respect to this element of damages, the trial court found, "The cars that were lost in the fire were not the Semars' personal vehicles. They were not customarily used by the Semars for transportation. Some cars were never driven at all but were transported on trailers when attending

22

shows." To the contrary, the testimony irrefutably established that family members of the Semars had occasionally used a vehicle when their vehicle was broken down. Additionally, the Semars and their family enjoyed using the antique vehicles in different parades. Accordingly, we find that the trial court abused its discretion in failing to award any amount of damages for the loss of use of the antique vehicles and, therefore, we must reverse. For this element of damages, especially considering the fact these special "one-of-a-kind" and irreplaceable vehicles will never again be able to be used by the Semars for any purpose whatsoever, we conclude that $20,000.00 is a reasonable amount to compensate the Semars for the loss of use of the antique vehicles that were destroyed in the fire.

***Failure to Assess Penalties and Attorney Fees against NUFIC***

The Semars also assert in their Answer to Appeal that the trial court "committed manifest error and abused his discretion in failing to assess penalties and attorney[] fees against defendant, [NUFIC], pursuant to [La.R.S.] 22:1892 for its failure to make a written offer of settlement to [them] within thirty days of receiving satisfactory proof of loss for [the Semars'] damages[.]" We find no merit to this contention.

When considering the imposition of penalties against the AHAC and NUFIC, the trial court concluded "that the proofs of claim submitted by the Semars [and State Farm] obligated AHAC to make a written offer to settle, but did not obligate NUFIC to make an offer." Additionally, "any failure on the part of NUFIC to make a written offer was not arbitrary, capricious, or without probable cause."

NUFIC provided the second layer of liability coverage. Its policy was an excess policy which provided coverage for damages only after Norcold's $500,000.00 SIR and the $1,500,000.00 coverage provided by AHAC were

23

exhausted. Therefore, NUFIC's policy would not be implicated unless and until the $2,000,000.00 in underlying limits were exhausted.

Although, ultimately, the total amount of damages awarded by the trial court minimally exceeded the amount of the underlying limits, this is not determinative of whether penalties against NUFIC were warranted. Rather, the supreme court has opined as follows:

> An insurer's conduct depends on the facts known to the insurer at the time of its action, and this court has declined to assess penalties "when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense." *Reed*, 857 So.2d at 1021 (citing *Block v. St. Paul Fire & Marine Ins. Co*., 32,306 (La.App. 2 Cir. 9/22/99), 742 So.2d 746, 752, 754). Specifically, when there is a "reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist." *Id*. (citing *Block*, 742 So.2d at 752). In these instances, when there are substantial, reasonable and legitimate questions as to the extent of an insurer's liability or an insured's loss, failure to pay within the statutory time period is not arbitrary, capricious or without probable cause.

*Louisiana Bag*, 999 So.2d at 1114 (footnote omitted). Given the facts of this case, and considering the $2,000,000.00 in underlying coverage, we do not find the trial court's failure to impose penalties against NUFIC to be manifestly erroneous.

### *Additional Damages*

The Semars also assert on appeal that the trial court "committed manifest error and abused [its] discretion in failing to award [them] damages for the five months that plaintiff, Ronald Semar, spent sifting through the remains of his museum for purposes of salvaging items that could be salvaged and for purposes of preparing a contents itemization." However, we agree with Norcold that the Semars "offer no legal support for such a claim." We, therefore, find no manifest error in the failure of the trial court to award this element of damages.

24

Additionally, in their Answer to Appeal, the Semars assert that the trial court "committed manifest error and abused its discretion in failing to award [them] damages for the years of active collecting that it would take to reacquire and replace the thousands of antiques and collectibles in the museum fire." However, the Semars' brief neither identifies this as an assignment of error or as an issue presented for our review, nor does the brief include a discussion of same. This issue is therefore deemed abandoned and will not be addressed herein. Uniform Rules—Courts of Appeal, Rule 2–12.4.

### Attorney Fees for Work Done on Appeal

Finally, the Semars assert on appeal that they are entitled to an additional award of attorney fees for the legal representation required by the appeal of this case. We agree. Applying La.R.S. 22:658 (since renumbered La.R.S. 22:1892), this court has stated that:

> [w]hen an award of attorney[] fees, pursuant to La.R.S. 22:658, is affirmed, the appellate court may award additional attorney[] fees for work done on appeal, provided that the plaintiff has requested the increase through proper appellate procedure. *See Hayes v. Allstate Ins. Co.*, 99-1558 (La.App. 3 Cir. 3/1/00); 758 So.2d 900, *writ denied*, 00-1597 (La.8/31/00); 766 So.2d 1280; La.Code Civ.P. art 2133.

*Gibson v. Allstate Ins. Co.*, 02-892, p. 10 (La.App. 3 Cir. 12/11/02), 832 So.2d 1209, 1216-17. Accordingly, we award the Semars additional attorney fees in the amount of $15,000.00 against AHAC for work done on this appeal.

## STATE FARM'S ANSWER TO APPEAL

### Failure to Assess Penalties and Attorney Fees against NUFIC

In its Answer to Appeal, State Farm asserts the same issue as the Semars relative to the failure of the trial court to assess penalties and attorney fees against NUFIC. For the reasons set forth above, we do not find the trial court's failure to impose penalties against NUFIC to be manifestly erroneous.

25

*Attorney Fees for Work Done on Appeal*

In its Answer to Appeal, State Farm also seeks an award of additional attorney fees for the work done on this appeal. State Farm is entitled to such an award; accordingly, we award State Farm additional attorney fees in the amount of $15,000.00 against AHAC for work done on this appeal.

## DECREE

For the foregoing reasons, the judgment of the trial court in the amount of $1,097,575.00 in favor of Ronald and Dolores Semar and against Norcold, Inc., American Home Assurance Company, and National Union Fire Insurance Company of Pittsburgh, Pennsylvania is affirmed. The judgment in the amount of $531,214.00 in favor of Ronald and Dolores Semar and against American Home Assurance Company is affirmed. The judgment of the trial court in the amount of $1,072,719.00 in favor of State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company and against Norcold, Inc., American Home Assurance Company, and National Union Fire Insurance Company of Pittsburgh, Pennsylvania is affirmed. The judgment in the amount of $518,786.00 in favor of State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company and against American Home Assurance Company is affirmed. However, we reverse the trial court's failure to award damages for the loss of use of the antique vehicles, and, accordingly, we render judgment herein in favor of Ronald and Dolores Semar and against Norcold, Inc., American Home Assurance Company, and National Union Fire Insurance Company of Pittsburgh, Pennsylvania in the amount of $20,000.00 for loss of use of their antique vehicles. Additionally, we render an award herein in the amount of $15,000.00 in additional attorney fees in favor of Ronald and Dolores Semar and against American Home Assurance Company. Finally, we render an award herein in the amount of

26

$15,000.00 in additional attorney fees in favor of State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company and against American Home Assurance Company. Costs of this appeal are assessed to Norcold, Inc., American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, Pennsylvania.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**