# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-881


**STEVEN ODSTRCIL**

**VERSUS**

**STATE FARM MUTUAL AUTO INS. CO.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-0335-15
HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.


**AFFIRMED.**

**John Edward Ortego**
**Martin Mayard, L.L.C.**
**P. O. Box 81338**
**Lafayette, LA 70598-1338**
**Telephone: (337) 291-2440**
**COUNSEL FOR:**
      **Defendant/Appellee - State Farm Mutual Auto Ins. Co.**

**John Ezell Jackson**
**Jackson Law Firm**
**P. O. Box 1239**
**Lake Charles, LA 70602-1239**
**Telephone: (337) 433-8866**
**COUNSEL FOR:**
      **Plaintiff-Appellant - Steven Odstrcil**

**THIBODEAUX, Chief Judge.**

The plaintiff, Steven Odstrcil, appeals the trial court's judgment granting a motion for summary judgment filed by the defendant, State Farm Mutual Automobile Insurance Company (State Farm). Finding no genuine issues of material fact, and finding that the defendant is entitled to judgment as a matter of law, we affirm the judgment of the trial court.

## I.

## ISSUES

We must decide whether the trial court legally erred in granting summary judgment to State Farm.

## II.

## FACTS AND PROCEDURAL HISTORY

Mr. Odstrcil was injured in an automobile accident on May 27, 2014. The at-fault driver had only $15,000.00 in coverage with GEICO. Mr. Odstrcil had $50,000.00 in underinsured motorist (UM) coverage with State Farm, and $1,000.00 medical pay coverage (MPC).

On June 19, 2014, Mr. Odstrcil sent State Farm notice of the accident. The following day, State Farm called Mr. Odstrcil's attorney requesting documentation of Mr. Odstrcil's injuries and treatment.

On July 10, 2014, State Farm paid the ambulance bill which consumed the MPC, and that part of the coverage was closed. United Healthcare was paying Mr. Odstrcil's ongoing medical bills from the accident, and it filed a subrogation claim through a third-party administrator, Optum, seeking

reimbursement from any amounts paid to Mr. Odstrcil. After Mr. Odstrcil had leg surgery and provided documentation of medical causation, State Farm paid its entire policy limits of $50,000.00 to Mr. Odstrcil *and* Optum. Mr. Odstrcil's attorney returned the check to State Farm uncashed, as a dispute had arisen between Mr. Odstrcil and United Healthcare/Optum over the subrogation claim. Once State Farm received notice of the disputed amount, it paid Mr. Odstrcil the undisputed amount of $42,881.64. On May 21, 2015, when State Farm received notice that Optum had waived the subrogation claim of $7,118.36, State Farm paid the remaining funds to Mr. Odstrcil.

Asserting bad faith in not timely paying its policy limits, Mr. Odstrcil filed suit against State Farm on June 8, 2015, seeking penalties and attorney fees for not having made an unconditional tender within thirty days of receipt of satisfactory proof of loss pursuant to La.R.S. 22:1892(A)(1). State Farm filed a motion for summary judgment which, after hearing, resulted in an August 4, 2016 judgment in favor of State Farm. Mr. Odstrcil appeals the trial court's judgment granting summary judgment to State Farm.

III.

## STANDARDS OF REVIEW

The grant or denial of a motion for summary judgment is reviewed de novo, "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Samaha v. Rau*, 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 (citations omitted); La.Code Civ.P. art. 966. An appellate court may not set aside a

2

trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

## IV.

## <u>LAW AND DISCUSSION</u>

Mr. Odstrcil contends that the trial court erred in granting summary judgment in favor of State Farm under La.Code Civ.P. art. 966 and La.R.S. 22:1892. We disagree. Louisiana Revised Statutes 22:1892, renumbered from La.R.S. 22:658 by La. Acts 2008, No. 415, § 1, effective on January 1, 2009, provides that insurers "shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest." La.R.S. 22:1892(A)(1). Further:

> Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor . . . including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim . . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs.

La.R.S. 22:1892(B)(1).

In its motion for summary judgment, State Farm presented an extensive timeline of its claims handling, documenting twenty-eight pertinent actions/events by State Farm in processing Mr. Odstrcil's claim. State Farm first

3

received notice of the accident on June 19, 2014. On June 20, State Farm called Mr. Odstrcil's attorney requesting documentation of Mr. Odstrcil's injuries and treatment. By July 10, 2014, State Farm had paid the ambulance bill, which depleted the $1,000.00 MPC, and that part of the claim was closed. On July 24, 2014, State Farm received a report of MRI studies, but there was no opinion regarding causation.

On August 6, 2014, State Farm received a subrogation claim from Optum, informing State Farm that United Healthcare had paid medicals on behalf of Mr. Odstrcil, but there was no amount provided.

On September 2, 2014, Mr. Odstrcil had surgery on his leg. State Farm called his attorney the following day regarding proof of causation, but the attorney was unsure of causation. Reports from the neurosurgeon on September 4 did not address causation. State Farm sent a written request for a medical opinion regarding causation on September 5 and again on September 10, 2014. On January 15, 2015, State Farm sent a reminder to Mr. Odstrcil's attorney that State Farm was waiting for an opinion on causation. On March 4, 2015, State Farm called Mr. Odstrcil's attorney requesting documentation regarding causation.

On March 20, 2015, State Farm received documents with an undated addendum from Dr. Kim saying that the leg injury was "probably" caused by the automobile accident on May 27, 2014. There was also a list of medical bills totaling over $43,000.00. Mr. Odstrcil's attorney wanted an unconditional tender of State Farm's entire UM policy limits, but no agreement was reached on the subrogation claim of Optum. State Farm knew that United Healthcare was paying Mr. Odstrcil's ongoing medical expenses and tried unsuccessfully to obtain the subrogation amount from Optum.

4

On April 4, 2015, State Farm mailed a check for its $50,000.00 UM policy limits to Mr. Odstrcil's attorney. The check was made payable to Mr. Odstrcil *and* Optum. Mr. Odstrcil's attorney returned the check to State Farm on April 13, 2015. Optum refused to approve State Farm's payment of its full policy limits to Mr. Odstrcil.

On April 23, 2015, State Farm received a voice mail from Optum stating that the amount of the subrogation claim, and therefore the amount in dispute, was $7,118.36. The following day, on April 24, State Farm received a fax from Optum documenting the amount of the subrogation claim.

On May 5, 2015, State Farm mailed a check for $42,881.64, representing the *undisputed* amount, made payable to Mr. Odstrcil and his attorney. State Farm consulted an attorney and prepared to file a concursus proceeding for the remaining amount of $7,118.36, pursuant to the subrogation claim of Optum on behalf of United Healthcare.

On May 21, 2015, State Farm received information that United Healthcare waived its subrogation claim. State Farm, on the same day, mailed a check to Mr. Odstrcil's attorney for the $7,118.36.

Based upon evidence of the foregoing, Stated Farm asserted that it was entitled to summary judgment because it had sufficient facts to be fully apprised of Mr. Odstrcil's claim on April 23 and 24 when it learned of the amount of United Healthcare's subrogation claim. Less than two weeks later, on May 5, 2015, it timely tendered the undisputed amount of $42,881.64 to Mr. Odstrcil. Finally, State Farm asserted that, if the tender of the undisputed amount is deemed untimely, State Farm was not arbitrary, capricious, or without probable cause in delaying the tender given the facts known at the time.

5

*Proof of Loss*

The Louisiana Supreme Court has articulated the criteria for determining when the insurer has received proof of loss.

> "Satisfactory proof of loss" in a claim pursuant to UM coverage is receipt by the insurer of "sufficient facts which ***fully apprise*** the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or under insured; (2) that he [or she] was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages." *McDill v. Utica Mutual Insurance Company*, 475 So.2d 1085, 1089 (La.1985).

*Reed v. State Farm Mut. Auto. Ins. Co.*, 03-107, pp. 15-16 (La. 10/21/03), 857 So.2d 1012, 1022 (emphasis added).

In *McDill*, the court examined satisfactory proof of loss in the context of UM coverage and stated that "it must be that quality of proof which enables the insurer to realize that it is probably liable for some part of the policy's coverage, and that quality of proof that enables it to *reasonably determine* the dollar amount of benefits to be paid." *McDill*, 475 So.2d. at 1089. The court in *Reed* discussed the similarities and the distinctions between the thirty percent tender of $7,500.00 in *Reed* and the lack of tender in *McDill*, and found that in both cases the issue was "whether the insurer received satisfactory proof of loss," which the court discussed in terms of

> whether the insured "fully apprised" the insurer of the extent of damages occasioned by the accident. After an insurer receives notice of the claim, the basis of the claim, and the identity of the doctors involved, in order for the insurer to avoid being arbitrary or capricious, it is necessary for the insurer to determine whether there exists a legitimate basis for not paying at least what it considers to be undisputed.

*Reed*, 857 So.2d at 1022.

In *Reed*, the court found that the thirty-percent tender was adequate and timely, and not arbitrary or capricious, because "Reed's medical records prior to the tender of $7,500.00 contained no evidence that a total knee replacement was imminent and causally related to the injuries she sustained in the accident." *Id*. at 1023. Similarly, in the present case, State Farm did not receive a medical opinion on causation until, after numerous requests, it finally received the undated addendum from Dr. Daniel Kim that the leg injury and surgery were "probably" related to the accident. State Farm received this medical report on March 20, 2015. Since State Farm paid the full amount of its policy limits, $50,000.00, on April 4, 2015, within fifteen days of being *fully apprised* of causation, its payment was well within the thirty-day requirement of the penalty statute. Statutes subjecting insurers to penalties are considered penal in nature and are to be strictly construed. *Theriot v. Midland Risk Ins. Co.*, 95-2895 (La. 5/20/97), 694 So.2d 184.

> One who claims entitlement to penalties and attorney fees has the burden of proving the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause. [*Hart v. Allstate Insurance Company*, 437 So.2d 823,] 828. It logically follows from this burden that a plaintiff who possesses information that would suffice as satisfactory proof of loss, but does not relay that information to the insurer is not entitled to a finding that the insurer was arbitrary or capricious. *Id.*; *see also, McClendon v. Economy Fire & Casualty Insurance Company*, 98-1537, p. 5 (La.App. 3 Cir. 4/7/99), 732 So.2d 727, 730 . . . . The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is clear that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay. *Block v. St. Paul Fire & Marine Ins. Co.*, 32,306, p. 7 (La.App. 2 Cir. 9/22/99), 742 So.2d 746, 751. The statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense. *Rudloff v. Louisiana Health Services and Indemnity Co.*, 385 So.2d 767, 771 (La.1980), *on rehearing*. Especially when there

is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist. *Block*, 32,306 at 8, 742 So.2d at 752.

Both LSA-R.S. 22:658 and LSA-R.S. 22:1220 require proof that the insurer was "arbitrary, capricious, or without probable cause," a phrase that is synonymous with "vexatious." *Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250, 1253 (La.1993). This court has noted that "vexatious refusal to pay" means unjustified, without reasonable or probable cause or excuse. *Id.*, *citing* COUCH ON INSURANCE 2d, § 58:70. Both phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense. *Id.*

Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action, which in the instant case was at the time of its tender of $7,500.00. *See Scott v. Insurance Company of North America*, 485 So.2d 50, 52 (La.1986).

*Reed*, 857 So.2d at 1020–21.

Louisiana jurisprudence and numerous statutes make it clear that an insurer's obligation to pay does not extend only to the injured plaintiff, and sometimes competing claims of the plaintiff's creditors, lienholders, and subrogees must be paid to the exclusion of the injured plaintiff himself. For example, La.R.S. 9:4752 provides that "[a] health care provider, hospital, or ambulance service that furnishes services or supplies to any injured person shall have a privilege for the reasonable charges or fees of such health care provider, hospital, or ambulance service on the net amount payable to the injured person" by another person or "by any insurance company under any contract providing for indemnity or compensation to the injured person." In interpreting the privilege in this statute, a panel of this court determined that a hospital's lien entitled it to the accident

8

victim's UM and PMC benefits under his automobile policy, as well as the proceeds under a liability policy, even though the victim received nothing. *Marquez v. Progressive Ins. Co.*, 06-1024 (La.App. 3 Cir. 12/6/06), 944 So.2d 876.

In fact, La.Code Civ.P. art. 4652 creates a process by which a casualty insurer can deposit its policy limits in a concursus proceeding and allow the court to handle the competing claims of the injured insured and others asserting ownership to the funds. *See also Nolan v. Audubon Ins. Grp.*, 10-1362 (La.App. 3 Cir. 3/9/11), 59 So.3d 487, *writ denied*, 11-987 (La. 6/24/11), 64 So.3d 218. There, we upheld the trial court's refusal to award penalties under La.R.S. 22:1973 against a homeowner's insurer for allegedly failing to render payment within thirty days of settlement where the insurer timely sent a check to the plaintiff that included the names of the mortgagees as payees. When the insurer offered to reissue the check if the insureds could obtain waivers from the mortgagees, and the insureds failed to do so, the insurer filed a concursus proceeding, which we found proper for handling the plaintiff's claims. *Id*.

Similarly here, State Farm sent a check for its policy limits of $50,000.00 made payable to the plaintiff and Optum, its subrogee, on April 4, 2015, just fifteen days after receiving satisfactory proof of causation. If State Farm had tendered its full policy limits of $50,000.00 to Mr. Odstrcil alone, when he demanded it, ignoring the notice of Optum's claim, Optum could have legally demanded that State Farm also pay its claim, subjecting State Farm to an additional $7,118.36 over and above its policy limits. *See State Nat. Fire Ins. Co. v. Sykes*, 527 So.2d 589 (La.App. 3 Cir. 1988). Recognizing the subrogation claim under La.Civ.Code art. 1825, State Farm had reasonable grounds and probable cause to protect itself from claims that exceeded its policy limits.

In *Richardson v. GEICO Indem. Co.*, 10-208 (La.App. 1 Cir. 9/10/10), 48 So.3d 307, *writ denied*, 10-2473 (La. 12/17/10), 51 So.3d 7, a Navy medical unit informed GEICO by letter that it had a claim for medical payments that it made on behalf of the plaintiff. The court held that the date upon which GEICO was informed by the Navy representative that the Navy's claim was $13,976.57, constituted the date upon which the thirty days began to run for purposes of La.R.S. 22:658 (now 22:1892). Even though GEICO knew that the plaintiff's attorney was seeking a reduction in the Navy's claim, the court found that "GEICO had actual and adequate knowledge by June 6, 2007," of the undisputed difference between the Navy's claim and the $25,000.00 policy limits. *Id*. at 316. Because GEICO did not make payment until July 18, 2007, the court found GEICO's actions arbitrary, capricious, and without probable cause, and it imposed penalties for same. The court stated:

> While the insurer is not required to tender payment for amounts that are reasonably in dispute, "there can be no good reason--or no probable cause--for withholding an undisputed amount." *Louisiana Bag Co.*, 999 So.2d at 1114 (quoting *Hammett v. Fire Ass'n of Philadelphia*, 181 La. 694, 160 So. 302, 304305 (1935)). Pursuant to LSA-R.S. 22:658, an insurer is required to make an unconditional payment of what it indisputably owes when the insured has demonstrated that he is entitled to recover under the insurance contract. *Demma v. Auto. Club Inter-Insurance Exchange*, 08-2810 (La.6/26/09), 15 So.3d 95, 103104.

*Id*.

Conversely here, State Farm paid the undisputed amount of $42,881.64 within twelve days of receiving confirmation of the amount of Optum's subrogation claim. More specifically, after receiving its check for $50,000.00 back from Mr. Odstrcil's attorney on April 13, State Farm tried repeatedly to obtain the amount in dispute between Mr. Odstrcil and Optum. When it finally obtained

verbal confirmation of the amount of Optum's claim, $7,118.36, on April 23, and written confirmation of the claim on April 24, State Farm had actual and adequate knowledge of the disputed amount. State Farm tendered the undisputed amount on May 5, 2015, within twelve days of being fully apprised of the undisputed amount. Therefore, State Farm cannot be seen as arbitrary, capricious, or without probable cause under the penalty statute.

On a motion for summary judgment under La.Code Civ.P. art. 966, if the mover will not bear the burden of proof at trial, such as State Farm in this case, it is not required to negate all essential elements of the Mr. Odstrcil's claim. Rather, State Farm must only point out to the court that there is an absence of factual support for one or more elements essential to Mr. Odstrcil's claim. Thereafter, if Mr. Odstrcil fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La.Code Civ.P. art. 966. Here, State Farm has fully demonstrated that it was not arbitrary, capricious, or without probable cause in protecting itself from the subrogee and for paying Mr. Odstrcil's claims in the manner and under the time frames discussed. As Mr. Odstrcil has produced no evidence to the contrary, there is no genuine issue of material fact, and State Farm is entitled to summary judgment as a matter of law. *Id.*

V.

**CONCLUSION**

Based upon the foregoing, we affirm the trial court's judgment in favor of State Farm. Costs are assessed to Steven Odstrcil.

**AFFIRMED**.